### SADIE F. ERP ET AL. v. Y. E. TILLMAN.

#### No. 2094. Decided November 23, 1910.

**1.—School Land—Application to Purchase—Case Stated.**

An application to purchase school land appraised at $3.00 per acre, made on Feb. 8, was suspended by the Land Commissioner, because a previous sale had not yet been cancelled. On Feb. 15, he wrote the applicant that his bid would be considered when the previous sale should be cancelled, if corrected to designate the part of the land so formerly sold for which he applied, his application being for an undesignated 240 acres out of a tract of 529½; on March 25, the Commissioner cancelled the former sale; on April 15, he awarded the land to applicant on his former bid of $3.00 per acre without correction of the designation. Held, that the applicant did not acquire title by such award as against a later regular application to purchase for $5.00 per acre, for (1) his application before the cancellation of the sale gave him no right to acquire the land; (2) it was too long before the land came on the market to entitle the Commissioner to treat it as renewed on cancellation; (3) the land was not properly designated in the application; (4) if treated as a renewed application it was not at the appraised value. (Pp. 579–583.)

**2.—Same—Case Discussed.**

Gracy v. Hendrix, 93 Texas, 26, and Hazelwood v. Rogan, 95 Texas, 295, explained and limited. Same cases, and Adams v. Terrell, 101 Texas, 331; Boswell v. Terrell, 97 Texas, 259; Willoughby v. Townsend, 93 Texas, 83; Fine v. Robison, 102 Texas, 406; Paterson v. Terrell, 96 Texas, 509; Burnam

v. Terrell, 97 Texas, 316; Ford v. Brown, 96 Texas, 437; Ford v. Brown, 33 Texas Civ. App., 198; McGee v. Corbin, 96 Texas, 41; Stewart v. Wagley, 68 S. W., 299; Barnes v. Williams, 102 Texas, 448; discussed, explained and harmonized. (Pp. 580–583.)

### 3.—Sale of School Land—Attacking Award—Limitation of Action—Pleading.

An award of school land by the Land Commissioner to an applicant for its purchase, though irregular and insufficient to confer title as against one applying later and in compliance with law, is good unless action attacking it is brought within one year (Act of March 16, 1905, Laws 29th Leg., p. 35). The right of the purchaser secured by this Act is not one which he must plead specially in an action of trespass to try title, as in the case of titles generally acquired by limitation. The Act is not one of limitation merely, the State having an interest in its enforcement to enable it to deal properly with purchasers. (Pp. 583–585.)

### 4.—Same—Action.—Title Subsequently Acquired.

Though the title of a purchaser of school land, suing in trespass to try title, was insufficient when the action was brought, but became indisputable before trial by the expiration of the time allowed his adversary to bring action to set aside the sale (Act of March 16, 1905, Laws 29th Leg., p. 35) it was not necessary for plaintiff to amend and set up such after acquired title as a new cause of action. It was available to him in support of his original action in the ordinary form of trespass to try title, though not specially pleaded. (Pp. 583–585.)

Error to the Court of Civil Appeals for the First District, in an appeal from Liberty County.

Mrs Erp, joined by her husband, sued Tillman for the recovery of land and had judgment therefor. Defendant's appeal resulted in a reversal and rendition of judgment in his favor, and upon this appellees, plaintiffs, obtained writ of error.

*A. W. Marshall,* for plaintiff in error.—The plaintiff in this case having made out a prima facie case by showing classification and appraisement, bond, application and award, and proof that it was in the required distance to his east 240 acres, the burden of proof was on the defendant to show that irregularities existed such as to avoid the award, and appellant not having done so, the plaintiff was entitled to recover. Knippa v. Brown, 11 Texas Ct. Rep., 195; Boaz v. Powell, 5 Texas Ct. Rep., 777; Bumpas v. McLennon, 18 Texas Ct. Rep., 267.

The Acts of the Twenty-ninth Legislature, Reg. Session, 1905, p. 35, provide that where an award of school land is made, and another party seeks to set aside said sale and award, such attempt must be made within one year. Therefore, defendant could not, under his application to purchase the land in controversy,. set up a defect in the plaintiffs' award, for the reason that over one year elapsed before plaintiffs' award was sought to be attacked. Acts Reg. Ses., 1905, p. 35; Weyert v. Terrell, 100 S. W., 133; Slaughter v. Terrell, 102 S. W., 399; Murphy v. Terrell, 100 S. W., 100.

An application to purchase school land made prematurely, before the land is declared on the market by the Commissioner, is not void, but may be the basis of an award by the Commissioner of the Land Office, where no superior rights have been acquired by a third party prior to the making of the award. And appellant having acquired

no rights between the date of the application and before the award, and his application having been filed two years after the award, such award will not be held invalid. Hazelwood v. Rogan, 95 Texas, 295; Williams v. Barnes, 99 S. W., 127; Hendrix v. Gracey, 50 S. W., 137; Stewart v. Wagley, 68 S. W., 297.

The fact that the sale to Erp was for three dollars per acre, and that at the time the State accepted Erp's obligation and awarded the land it was appraised at five dollars per acre, is immaterial. Erp's rights attached as of the date of his application, February 8, 1905, and at that time the land was appraised and value at $3 per acre. Smith v. Zesch, 70 S. W., 775; White v. Hall, 59 S. W., 810; Knippa v. Brown, 11 Texas Ct. Rep., 185; Hood v. Bursley, 13 Texas Ct. Rep., 231; Kulp v. Patterson, 14 Texas Ct. Rep., 321; Smithers v. Lowrance, 93 S. W., 1064.

The appellant, having acquired no rights between the date of Erp's application and the date of the award, could not complain that same was invalid. Neither could appellant complain that the land was sold to Erp for three dollars per acre, the valuation at the time of Erp's application, as between the date of his application and the award appellant acquired no superior rights; and the only party that could complain, if any one, would be the State of Texas. The court will presume that the Land Commissioner was in possession of facts showing a forfeiture at the date of the application of Erp. It is not the act of the Commissioner that makes the forfeiture, but the fact of nonoccupancy at that date. Williams v. Barnes, 99 S. W., 127; Hazelwood v. Rogan, 67 S. W., 80; Smith v. Zesch, 70 S. W., 776; Hood v. Bursley, 13 Texas Ct. Rep., 231; Bumpass v. McLendon, 18 Texas Ct. Rep., 267.

Was it necessary for the plaintiff in error to specially plead and set up that the defendant in error had not attacked his, plaintiff in error's title, or filed suit against plaintiff in error within one year after plaintiff in error's right accrued by award of the Land Office. On that head we assert with confidence the authority of: Benavedes v. Molina, 60 S. W., 260; Berry v. Jugal, 100 S. W., 815; Allen v. Allen, 105 S. W., 53; Hughes v. Lowe, 6 Texas, 289; Parks v. Caudle, 58 Texas, 216; Edwards v. Barwise, 69 Texas, 84.

Another proposition that will have to be decided adversely to this plaintiff in error is that the defendant in error can rely upon the title acquired after the commencement of the suit without setting up that title specially and calling the attention of the plaintiff to that fact. We cite the following authorities holding that a party can not set up an after acquired title to defeat his adversary. Lynn v. Scott, 3 Texas, 78; Menifee v. Hamilton, 32 Texas, 511; Maye v. Slade, 24 Texas, 208; Bradford v. Hamilton, 7 Texas, 58; Collins v. Balloon, 72 Texas, 332; Ballard v. Carmichael, 83 Texas, 359; Jones v. Thompson, 13 Texas, 466; Cook v. Caswell, 81 Texas, 684.

*Stevens & Pickett,* for defendant in error.—An award by the Land Commissioner has the effect to remove from the market school land so awarded, and if such land becomes subject to forfeiture for abandonment it is not again on the market and subject to sale until

the Land Commissioner makes due entry of such forfeiture upon the records of his office. And furthermore, if .the land is not on the market at the time the application to purchase is filed, no right vests in the applicant by reason of the Commissioner's afterward placing the land on the market; especially is this so where the price offered by the applicant is less than the valuation fixed by the Commissioner when the land is so placed on the market by him. Adams v. Terrell, 107 S. W., 537; Willoughby v. Townsend, 93 Texas, 80; O'Keefe v. McPherson, 2 Texas Ct. Rep., 97; Duncan v. State, 4 Texas Ct. Rep., 776; Brown v. Ford, 7 Texas Ct. Rep., 522; Lester v. Elliott, 2 Texas Ct. Rep., 860; Boswell v. Terrell, 78 S. W., 4; Robertson v. Starrett, 6 Texas Ct. Rep., 362; Nard v. Baker, 3 Texas Ct. Rep., 946; Bates v. Bratton, 72 S. W., 157; Pohle v. Robertson, 115 S. W., 1166.

The court erred in rendering judgment for the plaintiffs, because the uncontradicted testimony shows that when Wm. F. Erp made his application to purchase the land in controversy on February 8, 1905, his application did not describe the land he desired to purchase with sufficient certainty, but in this respect was fatally deficient; and further, that this description, if ever properly corrected, was not corrected until some time after February 14, 1905, on which date the Land Commissioner classified and valued the land in controversy at $5 per acre, and on the same date sent notice of that valuation and classification to the county clerk, while the said application of Erp only offered the sum of $3 per acre. Sec. 2, Acts of 1901, p. 292; Gracey v. Hendrix, 93 Texas, 26; Burnam v. Terrell, 9 Texas Ct. Rep., 226; Lester v. Elliott, 2 Texas Ct. Rep., 860; Nard v. Baker, 3 Texas Ct. Rep., 946; Ford v. Brown, 7 Texas Ct. Rep., 522.

An applicant, under a rejected application which complies with the law in force at the time same is filed, may show that a former award of the same land recognized in the Land Office is void and that the land was subject to sale under his application, and upon such showing is entitled in trespass to try title to a judgment for the land. Eastin v. Ferguson, 23 S. W., 43; Briggs v. Key, 71 S. W., 918; Nard v. Baker, 3 Texas Ct. Rep., 946.

If this statute validated a title that would have been held void on proof showing a noncompliance with the school land law, plaintiffs' claim to the land had not ripened into a title free from attack when they filed this suit on June 1, 1906, and they could not avail themselves of the Act of 1905 when it became a law after the filing of this suit without amending their petition. Collins v. Ballew, 72 Texas, 332. The chief object and purpose of a statute of limitation of this nature is to mature an inferior title in the hands of the possessor into the .superior title against all persons except the State. Pearson v. Burditt, 26 Texas, 173. And a statute of limitation not only bars the remedy, but at the expiration of the time prescribed, vests full title in the holder of the theretofore inchoate or invalid title. Erhard v. Hearne, 47 Texas, 478; Connor v. Hawkins, 71 Texas, 584.

It was necessary for plaintiffs to plead the limitation Act of 1905 in order to assert the provisions thereof in defense against the cross-bill filed by defendant. There surely can be no doubt that the statute is one of limitation. From the caption of the Act it is plain that the Legislature so intended it. It reads: "An Act to prescribe a period of limitation within which any person claiming the right to purchase or lease public free school, state university or asylum lands heretofore sold or leased to others, shall bring his suit therefor." Cytron v. St. Louis Transit Co., 104 S. W., 110; 25 Cyc., 983, 985; Slaughter v. Terrell, 102 S. W., 102; Murphy v. Terrell, 100 S. W., 130; King v. Robison, 128 S. W., 368.

Then this being a statute of limitation it was necessary for plaintiff to specially plead that Act in order to interpose its provisions as a defense. Rev. Stats., art. 3371; Myers v. Paxton, 78 Texas, 199; Trinity & B. V. Ry. Co. v. Gay, 88 Texas, 116; Boyd v. Ghent, 61 S. W., 723; Moore v. Kempner, 91 S. W., 336.

The evidence offered by plaintiffs alone is ample to disclose the fact that the Land Commissioner's award to Erp for the land in controversy was void, and when we so view the testimony we do not have before us a case in which an award, prima facie valid and vesting in the awardee the better title, is being attacked by a claimant under a subsequent rejected application. Willoughby v. Townsend, 93 Texas, 80; Gracey v. Hendrix, 93 Texas, 26; Smithers v. Lowrance, 100 Texas, 77; Adams v. Terrell, 107 S. W., 537.

Endorsements on the application of Erp show it was not accepted when first filed in the Land Office, but was suspended because of the prior sale to Chambers being still in force, and further because the application was invalid for want of a sufficient description of the land. These endorsements on Erp's application clearly show that the Land Commissioner had no power to award him the land under that application when it was filed. Pohle v. Robertson, 115 S. W., 1167; Williams v. Barnes, 111 S. W., 432; Ford v. Brown, 74 S. W., 535; O'Keefe v. McPherson, 61 S. W., 534; Dowding v. Ditmore, 65 S. W., 486; 67 S. W., 903.

When the Commissioner awards land to an applicant who in fact is not an actual settler at the time of the award, such a sale is absolutely void, and a subsequent applicant (although his application be rejected) may sue the former awardee and recover the land on making proof that said awardee was not in fact a settler when the land was awarded him. Metzler v. Johnson, 20 S. W., 1116; Eastin v. Ferguson, 23 S. W., 918; Hitson v. Glascock, 21 S. W., 710; Martin v. Marr, 62 S. W., 932; Briggs v. Key, 71 S. W., 43. But where an award is made to one who is a settler at the time of the award, a sale thereby is made, and if afterwards the land is abandoned the abandonment does not of itself work a forfeiture and replace the same on the market, but a formal forfeiture must be declared by the Commissioner and the land again listed with the county clerk. O'Keefe v. McPherson, 61 S. W., 534; Comanche Co. v. Brightman, 62 S. W., 974; Dowding v. Ditmore, 61 S. W., 486; Duncan v. State, 67 S. W., 903; Bates v. Bratton, 72 S. W., 157; Lamkin v. Matsler, 73 S. W., 970; Johnson v. Bibb, 75 S. W., 81.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This case depends upon the legal effect to be given to a purchase by W. F. Erp of the land in controversy from the State as part of its school fund, when set in opposition to a rejected subsequent application of Tillman to purchase the same land.

The facts out of which the questions arise are as follows: A tract of 529½ acres of public domain was surveyed in accordance with the statute regulating that subject for a person who purposed to buy it, and upon his failure to do so, was properly appraised and put upon the market as school land on the 9th day of August, 1902, at $3 per acre. The land in controversy, which is the west 240 acres of that tract, was regularly bought by application dated August 15, 1902, by one Chambers as an actual settler, who, on August 15, 1903, conveyed it to one Schmitz, taking his notes for the purchase money, and Schmitz was substituted in the Land Office as purchaser. The purchase money notes were assigned by Chambers to one at whose foreclosure sale Tillman afterwards purchased as stated below. On the 8th day of February, 1905, W. F. Erp, who had bought the east 240 acres of the larger tract as an actual settler, proceeding on the assumption that the Chambers-Schmitz sale had been or would be canceled for abandonment, filed his application to purchase 240 acres of the 529½ acres as additional land to his east 240 acres, not otherwise describing the tract for which he applied. On the 14th day of February, 1905, the Commissioner reappraised the land in controversy at $5 per acre and sent the proper notice to the county clerk, and on the 16th wrote Erp that his application had been suspended because of the Chambers-Schmitz sale, but that, if that sale should be canceled in the near future, his application could be further considered, provided he would designate the part of the 529½-acre tract for which he applied. On March 25, 1905, the Commissioner canceled the Chambers-Schmitz sale for abandonment and on the same day sent proper notice to the county clerk of the fact and that the land was again offered for sale, and, also on the same day, wrote Erp, notifying him of the cancellation, calling his attention to the letter of February 16, and allowing ten days in which Erp might comply therewith and informing him that unless that were done his application would be rejected. Without more appearing, the Commissioner, on April 5, 1905, awarded the land to Erp at $3 per acre, on his application of February 8, 1905, sale to take effect from that date. A decree of foreclosure having been obtained against Schmitz on his notes given to Chambers, Tillman bought in the land at the sale on June 5, 1905. This action was brought June 1, 1906, by Mrs. Erp, to whom her husband had conveyed the land, joined by the latter, against Tillman, the petition, which was never amended, containing only the general allegations in trespass to try title. Tillman filed a pleading August 13, 1906, which is not in the record, but which, according to recitals appearing, set up a cross action to recover the land as well as defensive matter. Thereafter, February 3, 1907, Tillman made application to buy the land, as an actual settler, at $5 per acre and his application was rejected by the Commissioner because of the sale to Erp.

Tillman, on March 8, 1907, amended his former pleading in this cause, the amendment containing a plea of not guilty to plaintiff's action and also a plea in reconvention to recover the land, alleging title and possession in the defendant and ouster by the plaintiff on June 1, 1906. To this plaintiffs pleaded not guilty.

Quite a number of questions arise upon these facts, which have been stated in the order of time in which they occurred, as conducive to a clear understanding of the case. There is now no contention that the cancellation of the Chambers-Schmitz sale was wrongful or that through it Tillman has any title. The questions are as to the sufficiency of the sale to plaintiff to defeat the subsequent effort of Tillman to buy, and to constitute a title upon which to base a recovery in trespass to try title. The first which we shall consider is whether or not the award to Erp was so made originally that it was then valid. It was based upon an application made on February 8, before the cancellation of the Chambers-Schmitz sale was made on March 25, and hence when the application was made and for more than a month thereafter the land was not open to purchase. Adams v. Terrell, 101 Texas, 331. It follows that no right was acquired at the time of the filing of the application nor prior to that cancellation (Gracy v. Hendrix, 93 Texas, 26; Willoughby v. Townsend, 93 Texas, 50) and the question arises whether or not one was acquired by the action taken after the cancellation, under the ruling in Hazlewood v. Rogan, 95 Texas, 295. The doctrines of the three cases last cited and of others following the one or the other were regarded by the Court of Civil Appeals as conflicting. We do not so consider them, and it may help to a better understanding for us to restate the two propositions on which those decisions respectively are based. Gracy v. Hendrix holds that an application to purchase school land at a price below that at which it has been appraised and offered for sale secures no right to the applicant; and that such an application, nothing further being done, does not afterwards constitute an acceptance of an offer to sell subsequently made for a price below that stated in it. Hazlewood v. Rogan establishes a proposition which is equally clear, although the application of it under differing circumstances sometimes gives rise to questions, mainly of fact, which require close discrimination. It is that one who has filed an application which is premature, and therefore ineffectual to secure a right because the land can not then be bought, yet has the right to make application when the proper time has come, and under proper circumstances this may consist in the use for that purpose of papers already prepared and on file and the payment already in the proper hands. We make the qualification "under proper circumstances," because it is not held in Hazlewood v. Rogan, has never been held, and could not properly be held, that an application which has no effect when filed because the land is not open to purchase must yet, as a matter of course and under all circumstances, be treated as one made and operating after the land has come on the market if there be no intervening right. The mere statement of the propositions which lie at the foundations of these cases shows there is no conflict between them, and it is only on the supposition

that the latter case goes to the extent last indicated that even a theoretical inconsistency would arise. But it may be answered that, while the legal doctrines may not conflict, there was no good reason for a distinction in the facts of the two cases and that they should have been governed by the same rule. Let us briefly examine those facts to see if there were substantial differences which constituted just grounds for different judgments, remembering that we are not to apply any rule of law as if it were a senseless and spiritless formula of words, but that, as Chief Justice Hemphill expresses it, "all rules of practice and principles of law must have a reasonable construction and be made to harmonize with other rules and principles equally binding." Henderson v. Kissam, 8 Texas, 57.

In Gracy v. Hendrix while land was offered for sale at $2 per acre, Hendrix filed his application in the Land Office to buy at $1.50 per acre. Three days afterwards the valuation was reduced to $1 and nothing further appears to have been done with that application until it was rejected by the Commissioner after the lapse of more than a month. Certainly it ought to have been held, under these bare facts, that the Commissioner should have treated the application as one preferred and insisted on as an acceptance of the last offer to sell at a different, though lower, price than that stated in the paper. As was held, in substance, it was no part of his function, by his own action, to convert into a valid' acceptance that which was none when made and which the applicant had never in any way changed or showed his purpose to use as a new one. The Commissioner could not act for the other party and assume that he was still offering $1.50 per acre when the land could be bought for $1 per acre. Another decision, more like Hazlewood v. Rogan, refusing to hold that an application, made at a time when the land was not on the market, had been so employed after it was as to entitle it to be treated as a new application then preferred, is Boswell v. Terrell, 97 Texas, 259. The same theory controlled Willoughby v. Townsend, 93 Texas, 83; Fine·v. Robison, 102 Texas, 406, and Adams v. Terrell, 101 Texas, 331, but no question was discussed in these cases as to the application of the doctrine in Hazlewood v. Rogan. How we distinguish them from that case will now be stated.

In Hazlewood v. Rogan the obstacle to a sale of the land was a lease, and a doubt existed in the Land Office and among lessees and intending purchasers whether it expired at midnight of the 25th, or would expire at midnight of the 26th of August, 1901. Hazlewood on the morning of the 26th filed with the county clerk applications which reached the Land Office September 3, and were accepted by the Commissioner September 20. We think there can be no doubt that these facts showed that applications were preferred and insisted on after the expiration of the lease which contained every essential and complied substantially with every requirement of law for applications as fully as if filed after midnight of the 26th; and it was this consideration that controlled. The court, recognizing the general doctrine applied in Gracy v. Hendrix, that no right could be fixed but by an application meeting the terms of the offer to sell at a time when the land was open to sale, and that others might acquire

rights in an interval between the coming of the land upon the. market and the happening of those things which might be regarded as a renewal of the application, was careful to show that such a state of things did not exist in that case; and as there was no other reason why those applications should not be treated as the substantial equivalents of new ones, the court so treated them. All this is true of Patterson v. Terrell, 96 Texas, 509, except that in that case the Commissioner had not accepted but had rejected the application. It was held that this made no difference when it plainly appeared that the applicant had done that which was the substantial equivalent of the making of application at a time when the Commissioner had power to sell. But this is very far from holding that any application filed when the land can not be sold may thereafter, at any time when the land may become subject to sale, be used, even with the consent of the Commissioner, instead of an application then made. Whether that may be done must always depend upon whether or not such use of the premature application will substantially comply with the law. It is provided that the sale when made shall be effective from the date when the prescribed papers are filed in the Land Office. (Rev. Stats., art. 4218j.) It is evident therefore that there might be such difference between the date when the papers were executed and filed and the time when a sale could be made as in itself to constitute a reason why no sale could be based on such papers. In Hazlewood v. Rogan and Patterson v. Terrell, as was pointed out in Burnam v. Terrell, 97 Texas, 316, the dates of filing the applications and the expiration of the leases were so nearly the same that a sale made at the latter date would take effect on practically the same date as the former and thus comply substantially with the statute cited. Whether or not that was true of Gracy v. Hendrix might be questionable, but that decision, as interpreted in later ones, is controlled by the fact that nothing whatever was done after the price of the land was reduced to conform the only application ever made to the terms of the new offer.

Ford v. Brown, 96 Texas, 537, s. c., 33 Texas Civ. App., 198, was first presented to this court upon certified questions with a statement which showed that former sale of the land had been canceled and notice thereof had been mailed to the county clerk of Concho County which reached him only forty minutes after the application in question had been filed in the Land Office, and also indicated that a second application had been made by another party at a later hour of the same day, under which a right might have accrued superior to the claim of the first applicant. The question was therefore answered "As against one who applied to purchase the land after the notice had been received by the clerk the appellee did not acquire any right or title in the land by his application which was prematurely made." The Court of Civil Appeals, in disposing of the case afterwards, found that the second applicant was not an actual settler and could not have acquired any right by his application, and affirmed the judgment of the District Court in favor of the first applicant who was the plaintiff. A writ of error was denied by this court in the application for which the question was raised in such way that

the refusal of the writ necessarily affirmed that the plaintiff had acquired a right to have the Commissioner accept his application. We think that action was correct for the reason that, when the time came when the land could be sold, the application filed only forty minutes before could not reasonably be treated otherwise than as then pending for acceptance. It is true, as was held, that no right was acquired at the moment the paper was filed nor at any other until that arrived when the Commissioner was empowered to sell. But when that came, an application filed forty minutes before was practically the same as one then filed, because no change of circumstances, conditions or purposes could reasonably be assumed to have taken place in the interval. McGee v. Corbin, 96 Texas, 41.

Another case referred to by the Court of Civil Appeals (Stewart v. Wagley, 68 S. W., 299), seems to have been governed by the proposition, so often decided, that a plaintiff relying on a rejected application, in trespass to try title against a defendant holding under an award of the land, must show the nullity of the award and the superiority of his own claim. Barnes v. Williams, 102 Texas, 448. Just what were the facts on which the sale to defendant in that case depended were not made to appear.

We have thus endeavored to show the propositions of law underlying the two classes of cases and to explain the application hitherto made of them to varying facts, in the hope that the discussion will conduce to a clear understanding of the propositions themselves. No effort can entirely remove in advance the difficulties to be encountered in applying them or any other rules to cases with different facts.

Coming back to the case in hand, we agree with the Court of Civil Appeals in its conclusion that for several reasons Erp's application and the award of the land by the Commissioner did not constitute a sale in compliance with law. (1) The dates of the application and of the cancellation, after which latter date only could a statutory sale take place, were so materially different that they could not have been treated as substantially the same, and a sale actually taking place at the later date, to comply with the statute, would have had to date back to a much earlier time when no sale was legally possible. (2) There was no designation in the application of the land sold. (3) The sale was not at the appraised value. We take these latter facts as found by the Court of Civil Appeals. This brings us to the questions as to the effect of the Act approved March 16, 1905. (Laws 29th Leg., p. 35.)

It is plain that if a year had elapsed before plaintiff brought this action and he had pleaded the statute, the validity of the award under which he claims would not have been open to attack, but, under the terms of the statute, would have been conclusive evidence that all requirements of law had been complied with. Wyerts v. Terrell, 100 Texas, 410; Murphy v. Terrell, 100 Texas, 399. Counsel for defendant in error combat this proposition, which was asserted by the Court of Civil Appeals, contending that, as plaintiff must recover on the strength of his title and his own evidence discloses defects which vitiate the award, advantage may be taken of them by the defendant. The answer is that the award and its recognition by

the officers of the State for a year constituted title sufficient for such a controversy, and to those facts the statute gives conclusive effect as evidence of title, precluding inquiry as to antecedent defects.

It was held by the Court of Civil Appeals that the statute was merely one of limitation, the benefit of which must be claimed by special pleading. We agree that under the decisions of this court based on article 3371, Revised Statutes, a plaintiff in trespass to try title claiming title through the operation of the statutes of limitations must specially plead such title. Mayers v. Paxton, 78 Texas, 196; Molino v. Benavides, 94 Texas, 415.

But we do not agree that the Act of 1905 is a statute of limitation only, for the benefit of a party to a suit, to be pleaded or waived as he may choose. It may properly be called a statute of limitation, but it is more than that. In addition to fixing a time for suit, it contains both a rule of substantive law and a rule of evidence which the courts must take notice of and be guided by in the decision of such causes. It ought not to be forgotten, though it often is, that the interests of the two contestants over school land which has been sold to one of them are not the only ones involved. The State has an interest in the maintenance of sales made for the benefit of its school fund, and it was largely to give such protection that this statute was passed. It had been common for sales which had stood for years to be treated as naught and the relations and accounts between the State and its purchasers disturbed by other applicants showing some failure to comply with the law in the making of the sales. It was not so much to protect purchasers who had not complied with the law as it was to prevent such interferences with sales and to reserve to the State the election to abide by or repudiate them, that this statute was adopted. A year was deemed sufficient time in which to allow awards to be put to the tests previously applied at the instance of intending purchasers and lessees, and after which only the State could interfere. This seems to make it sufficiently evident that this is not an ordinary statue of limitation. The award in such a contest as this constitutes the title of the purchaser which may be produced in evidence without special pleading, and when it is produced and shown to have stood for a year, this statute, of which the court must take notice, makes it conclusive evidence of a sale valid against every one but the State.

It is also contended that, even though it be true that the benefit of the statute need not be specially claimed as one of limitation, yet the title on which plaintiff relies is one which did not exist at the institution of the action but was acquired afterwards through the operation of the statute, and which can not sustain a recovery, inasmuch as it would constitute a new cause of action which was not set up by amendment after it accrued. The rule thus invoked is well settled, but we think it is not applicable to the case. The title is not, in the sense of that rule, a new one acquired by anything new done after the beginning of the action. The right comes from the operation of the law upon the only claim of title which plaintiff has ever had. That claim and all its evidences existed when the suit was brought. That evidence, which was disputable within the year,

became indisputable after the expiration thereof by action of the law in force when the suit was commenced. This was not matter to be pleaded as constituting a new cause of action arising from transactions during the pendency of the suit, but was matter of law to be noticed and applied by the court. When the year passed without attack upon the award it stood as if valid from the beginning and the production of it at the trial was the evidence to sustain the action.

We assume, for the purposes of this case, that inquiry can be made within the year into the regularity and validity of such awards by any defendant in trespass to try title in order to test their sufficiency as title to enable the plaintiff to recover. There is a question whether or not, since the enactment of the Act of 1905, they can be attacked at all except by the State or persons who have authority received from the State through proper applications to purchase or lease and actions brought within the year; in other words, whether or not awards by the officers intrusted by the State with authority to make sales are open to question at all, except by those specified in the statute. The question has not been referred to in the arguments and there is no necessity to decide it at present.

We conclude that the plaintiff on the admitted facts was entitled to recover and the judgment of the Court of Civil Appeals will be reversed and that of the District Court affirmed.

*Judgment of Court of Civil Appeals Reversed.*
*Judgment of District Court Affirmed.*