Sadie F. Erp et al. v. J. T. Robison, Commissioner of the General Land Office.

No. 2283. Decided April 2, June 27, 1913.

**1.—School Land—Premature Application to Purchase.**

Until a previous sale of school land had been officially canceled, a second application to purchase it was unauthorized and conferred no right, though the sale was cancelled after it was filed. (P. 145.)

**2.—Same—Forfeiture by Abandonment.**

Under the Act of April 19, 1901, Rev. Stats., 1911, art. 5424, abandonment of school land by the purchaser does not, *ipso facto*, work a forfeiture, and the land is not subject to resale until such forfeiture has been officially declared. Adams v. Terrell, 101 Texas, 331, approved and followed. (Pp. 145, 146.)

**3.—School Land—Appraised Value.**

A sale of school land at less than the value at which it was appraised at the time the rights of the purchaser attached was invalid. (P. 146.)

**4.—Same—Case Stated.**

A purchaser having abandoned the school land bought, and another having applied to purchase it at the value as then appraised, it was subsequently appraised at a higher price. Thereafter the first sale was forfeited for abandonment. A subsequent sale to the second applicant at the original appraisement was invalid. His application conferred no right when made, because the original sale had not been cancelled; nor after the cancellation, because it was then at less than the appraised price. (Pp. 144-147.)

**5.—School Land—Judgment—Limitation.**

A judgment in an action between adverse claimants of the right to purchase school land, holding the sale to one valid as against his adversary because the latter had not brought suit for the land within one year from the date of its award to the other, as required by the Act of March 16, 1905 (Rev.

Stats., 1911, arts. 5458, 5459), was not binding on the State. The party prevailing therein, on the sale to him being cancelled by the Land Commissioner as one illegally made, could not maintain action for mandamus to require the Commissioner to reinstate him on the ground that the validity of his purchase had been determined by his judgment against the adverse claimant. (Pp. 146, 147.)

6.—Same.

A claimant of school land defeated. the action of an adverse claimant therefor against him on the ground that, though his own purchase was invalid against the State, his adversary was barred of his action by limitation (Rev. Stats., 1911, arts. 5458, 5459). Held that this judgment gave him no right, as against the State's action in cancelling his own purchase for invalidity, to assert the title of the adverse purchaser as one acquired by him under his judgment. That judgment determined such title to be invalidated by limitation. (Pp. 146, 147.)

Original proceeding in the Supreme Court, by Sadie F. Erp, joined by her husband, for writ of mandamus against Robison, as Commissioner of the General Land Office.

*N. A. Rector,* for relators.

*B. F. Looney,* Attorney General, and *G. B. Smedley,* Assistant, for respondent.

*E. B. Pickett, Jr.,* also filed argument as *amicus curiae.*

MR. JUSTICE PHILLIPS delivered the opinion of the court.

This is an action to require the respondent to vacate his cancellation of an award and sale of a tract of public school land heretofore made by the Commissioner of the General Land Office to Wm. F. Erp, thereafter conveyed to Sadie F. Erp, his wife, and reinstate such sale upon the records of his office.

It appears from the recitals of the petition substantially as follows:

The tract of land was originally appraised at $3 per acre, and awarded and sold to W. E. Chambers, for whom one Schmitz was subsequently substituted on his purchase of it from Chambers, in which transaction he delivered to the latter his vendor's lien notes therefor in the principal sum of $2000. On February 8, 1905, prior to any cancellation by the Commissioner of the Chambers-Schmitz sale, Wm. F. Erp, upon the assumption, as it may be presumed, that such sale had been or would be canceled for abandonment, duly made application to purchase the tract at its then appraised value, $3 per acre. On or about March 15, 1905, the land was reappraised by the Commissioner at $5 per acre, of which fact Erp was not apprised until after the award and sale of the land to him. Both Chambers and Schmitz failed to occupy the land as required by law, and on March 25, 1905, the Chambers-Schmitz sale was canceled by the Commissioner for non-occupancy, and the land placed upon the market for sale. It was awarded and sold by the Commissioner to Erp on April 5, 1905, upon his application of February 8, 1905. Thereafter in the District Court of Liberty County one Ager,

as the holder of the vendor's lien notes given by Schmitz to Chambers for the land, obtained a foreclosure of such lien, under which Y. E. Tillman purchased it. On June 1, 1906, Erp and wife, these relators, instituted in that court a suit against Tillman for the land in trespass to try title, to which Tillman filed an answer consisting of a general denial and plea of not guilty. On February 5, 1907, prior to the trial of this case, Tillman duly made application to purchase the land at its then appraised value of $5 per acre, which was rejected by the Commissioner because, according to his endorsement, of its having been sold to Erp. Thereupon Tillman amended his pleading in the suit, added a plea of reconvention against the Erps for recovery of the land, in trespass to try title, to which they pleaded not guilty. The result of this suit was a judgment in favor of the Erps on their original action and also on Tillman's cross-action, which was reversed and the cause rendered in Tillman's favor by the Court of Civil Appeals. Tillman v. Erp, 121 S. W., 547. On writ of error to this court the judgment of the trial court was affirmed. Erp v. Tillman, 103 Texas, 574, 131 S. W., 1057. Thereafter the Commissioner, on the advice of the Attorney General, canceled the sale to Erp upon the ground that it was illegally made; and it appears from the petition that the land had been again placed upon the market for sale.

The purpose of this proceeding is to compel the recognition of the original sale by the State of this tract of land to Wm. F. Erp and a consequent right in the relators to complete the purchase and obtain the title. In order to grant such relief the court must be warranted in holding that in virtue of the sale the relators have acquired such legal rights as entitle them to enforce it, as a mandamus must be founded upon a clear legal right and otherwise does not lie. Texas Mex. Ry. Co. v. Jarvis, 80 Texas, 456, 15 S. W., 1089; Teat v. McGaughey, 85 Texas, 478, 22 S. W., 302.

It is evident from the petition that there had been no official cancellation of the previous Chambers-Schmitz sale of this land when Erp filed his application to purchase on February 8, 1905. It was not officially canceled until March 25, 1905. The land was, therefore, not subject to purchase when Erp's application was filed, and the sale made upon the premature application was unauthorized and conferred no right. Adams v. Terrell, 101 Texas, 331, 107 S. W., 537; Boswell v. Terrell, 97 Texas, 259, 78 S. W., 4; Willoughby v. Townsend, 93 Texas, 80, 53 S. W., 581; Ford v. Brown, 96 Texas, 537, 74 S. W., 535. We have considered the argument advanced by counsel for the relators in support of the proposition that under the Act of April 19, 1901 (art. 5424, Rev. Stats., 1911) abandonment, *ipso facto,* works a forfeiture of the sale, and against the decision rendered by Chief Justice Gaines in Adams v. Terrell, supra, upon that question; but we are convinced of the soundness of that decision and have no disposition to overturn it. While the language of the Act is that "all forfeitures for non-occupancy shall have the effect of placing the land upon the market without any

action whatever on the part of the Commissioner of the General Land Office," under the Act the land is clearly not upon the market until the forfeiture accrues. There is distinctly no provision, however, that non-occupancy shall, *ipso facto,* constitute the forfeiture; and it is necessary to read such a provision into the Act in order to give it the construction for which relators contend.

It furthermore appears from the petition that when the land was awarded to Erp at the price of $3 per acre, it stood appraised at $5 per acre; whereby a sale was effected for less than the appraised value of the land, contrary to law.

Both of these features of this sale were discussed by the Court of Civil Appeals and this court in their respective opinions, *supra,* rendered on the appeal of the case of Erp v. Tillman, involving this land, tried in the District Court of Liberty County, resulting in the holding by both courts that the sale to Erp was invalid upon either ground. As the sale was not in compliance with the law, the relators have acquired no rights thereunder, and are therefore not in position to invoke a mandamus to compel its recognition and reinstatement by respondent.

The holding of this court in Erp v. Tillman that in that controversy the Erps were entitled to prevail and to a judgment in their favor for this land, gives no additional force to the position of relators in this proceeding. That decision was not effectual to impart to this sale a validity as against the State that it did not originally possess. In holding that the sale was not in compliance with law the court there substantially decided that it was invalid as against the State, but that under the operation of the Act of March 16, 1905 (arts. 5458-5459, Rev. Stats., 1911), because no suit had been brought for the land within one year from the date of its award, it was a sale valid against all other adverse claimants. The sale to Erp in our opinion undoubtedly has under this Act the status of entire validity as to all such claimants, but not as against the State. The statute was intended as one of repose and to conclude all such adverse claims after the lapse of a year from the date of the award, giving to a purchaser protection and security from attack by all claimants other than the State after his award has stood unassailed for such period of time, and placing it beyond the power of anyone but the State to thereafter interfere. But the proviso of the Act relieves the State from the operation it possesses as to all other persons, for it clearly reserves to the State the right of election to either abide by or repudiate any sale not had in compliance with the law. It thus clearly appears that the Act has no vitalizing power as against the State, and can not be availed of to require the Commissioner of the General Land Office, an executive officer in charge of such department, to recognize and fulfill for the State a sale, which under the law was invalid in its inception. The failure of the State to repudiate such a sale would not make it valid, or entitle the claimant to enforce such rights in respect thereto as inhere only under a lawful purchase.

The further proposition is advanced that if the sale to Erp was invalid, Tillman acquired title to the land in virtue of his application

filed February 5, 1907, his cash payment of one-fortieth or the purchase price and the execution of his obligation for the balance, which passed to the relator, Sadie F. Erp, under the judgment rendered in the suit of Erp v. Tillman, whereby it is contended that the relators, having offered to carry out such alleged purchase by Tillman, are entitled to be recognized as substitute purchasers of the land under such title. The basis of the proposition is that under his application of February 5, 1907, Tillman acquired a title superior to that of relators, of which they may now make use. A sufficient answer to this is that Tillman acquired no title under such application, as was necessarily held by the court in Erp v. Tillman in its determination that under these identical facts the Erps were entitled to recover the land from Tillman. As was there plainly decided and as we have here already affirmed, after the lapse of a year from the award to Erp the sale to him became valid against everyone but the State, necessarily vesting in Erp, as between all other persons and himself, the superior right and title to the land. Such was its status when Tillman filed his application, and so long as it continued Tillman nor anyone else could acquire a valid title.

*Mandamus refused.*

Filed April 2, 1913.

### ON MOTION FOR REHEARING.

We have carefully considered the motion for rehearing, but adhere to our original disposition of the case.

In the opinion filed appears this language:

"It furthermore appears from the petition that when the land was awarded to Erp at the price of $3 per acre, it stood appraised at $5 per acre; whereby a sale was effected for less than the appraised value of the land, contrary to law."

This is possibly subject to the construction that a reappraisement of land of this character before its award, whereby its appraised value is increased, would of itself render invalid a sale made for a price at which it stood appraised when the application to purchase was filed. It was not our purpose to determine this question since its decision was unnecessary in the case. What we intended to make clear was that the land here involved was not sold at its appraised value, and for this reason in itself the sale was invalid. This is true since the land was not capable of sale until after a legal cancellation of the Chambers-Schmitz sale, which did not occur until March 25, 1905, at which time the land stood reappraised at $5 per acre, whereas the sale to Erp, upon which the application for a mandamus is based, was made at $3 per acre under his premature application of February 8, 1905.

The motion for rehearing is overruled.

Filed June 27, 1913.